Harness *et al. v.* Horne.

---

HARNESS ET AL. *v.* HORNE.

[No. 2,427.   Filed May 10, 1898.]

BILLS AND NOTES.—*Consideration.—Fraud.*—The collection of a note given as part purchase money of an electric belt and truss business, including stock, material, and machinery on hand, cannot be defeated by proof of a statement made by the seller and payee of the note at the time of sale to the effect that the business was worth an amount greatly in excess of that realized therefrom by the purchaser, where the purchaser received substantially the articles mentioned in the inventory.

From the Howard Circuit Court.   *Reversed.*

*C. N. Pollard, B. F. Harness* and *W. R. Voorhis,* for appellants.

*B. Borders* and *James O'Brien,* for appellee.

BLACK, J.—This was an action brought by the appellee against the appellants, Benjamin F. Harness and William W. Harness, upon a promissory note for $500.00 made by the appellants to the appellee. The appellants answered by general denial and by a paragraph alleging want of consideration; and the appellant Benjamin F. Harness separately answered failure of consideration and also separately answered in two paragraphs by way of counterclaim for alleged fraud. The appellee replied, and the issues of fact were tried by jury. There was a special verdict, in which the facts were stated in substance as follows:   On or about the 1st day of March, 1893, the appellee sold a certain electric belt and truss business, including stock, material and machinery on hand, at Chicago, to the appellant Benjamin F. Harness and one Charles E. Ellis, to each of them one-half thereof.   Benjamin F. Harness paid the appellee $2,000.00 in cash, and the appellants executed to him two promissory notes, one for $500.00 due in six months, and one for $500.00 due in one year, each with interest at six per cent. per annum, for the one-half of said business.   These notes were signed by the appellant William W. Harness as surety.   The former note was paid; the latter, being the note in suit, amounting with the interest thereon to $587.00, was due and unpaid.   The jury stated that there was not sufficient evidence to show what Ellis paid for his one-half interest in the business.   About the time of this transaction, the appellee made out an inventory of the material and goods on hands, and delivered it or a copy of it, to Ellis or Benjamin F.

Harness. It was found that this inventory did not contain substantially a correct statement of the articles and goods so sold, but that the purchasers about that time received from the appellee substantially the articles and goods mentioned in the inventory. Soon after the sale, the purchasers incorporated the business under the name of The Dr. Horne Electric Belt and Truss Co. The stock of the corporation was divided into two hundred and fifty shares of $100.00 each, said Ellis subscribing for one hundred and twenty-five shares, Benjamin F. Harness seventy-five shares and his wife fifty shares, the shares subscribed by Harness and his wife representing the whole interest so purchased by Benjamin F. Harness. The business was afterward carried on by this corporation. Benjamin F. Harness and his wife attending to the business at the home office, and Ellis attending to the advertising of the business; and up to the time Harness and wife sold their shares to one Gallear the corporation received $4,507.47 in money from the sale of goods at retail and paid for advertising in goods taken out of the stock of the business a bill amounting to about $2,400. It was found that at or prior to his said sale the appellee made false statements concerning said business; that he stated to Harness, for the purpose of inducing him to purchase the business, that said purchasers could easily clear $10,000.00 a year out of the business; that the statements made to Benjamin F. Harness by the appellee at and before the sale, were not all substantially correct and true; that the appellee had conducted the business for ten years in Chicago; that Harness and Ellis and said corporation sold and disposed, at retail, of all the stock on hand, manufactured goods and material, except a small amount, for their own benefit, and afterward Harness and his wife sold their one-half of the stock

in the company to said Gallear for $1,200; that the sole inducement for Gallear to make said purchase was the fact that he had about five hundred thousand names and addresses, worth from $3,000 to $5,000, which he could use in advertising the business, without paying out any money for advertising, and which were of no value to him in any other way. Benjamin F. Harness did not at any time offer to return anything which he had received from the appellee. It was found that prior to the appellee's sale, he represented to Benjamin F. Harness that the business was worth $10,000 or more, and that he could make that amount per year in the business; that the appellee verbally insured him that he could do so; that the appellee represented to said Harness, before the purchase, that the former had names and addresses upon his books pertaining to said business, of the value of from $5,000 to $10,000 to said business. It was also found that said representations were made for the purpose of inducing said Harness to purchase the one-half interest in said business; that the representations were false; that Harness believed them to be true, and relied upon them as being true in making the purchase, and was induced by them to make the purchase. It was found that the first information Benjamin F. Harness had that the appellee desired to sell his business was obtained through Charles E. Ellis, in February, 1893; that Ellis at the time represented to said Harness that said business was of great value, and that a large amount of money could be made out of it, and immediately thereafter Ellis took Harness and his wife to the appellee's office and introduced them; that the statements and representations that had been made by Ellis to Harness were repeated at the office of the appellee, in his presence, and they were approved and sanctioned by the appellee as being true.

Prior to the time that appellee and Harness first met, the former had placed his said business in the hands of said Ellis for sale.

Ellis and Harness took charge of the business about the 1st of March, 1893, and operated it until about the 26th or 28th of April, 1894.    During the time they carried on the business, the total expenditures therein amounted to $7,430.68.    The methods of advertising pursued by Ellis and Harness in carrying on the business were as good as those used by the appellee, or better.    Ellis was an experienced man in the advertising business, and had been placing the advertising business for the appellee for a number of years.    Ellis and Harness prosecuted the business with diligence and industry.    It was found that one-half the interest in said business at the time of the sale by the appellee was worth nothing in cash, "the same being operated as a business by one who had no knowledge of the same;" that Benjamin F. Harness had no knowledge of the value of the business or of the goods on hand at the time of his purchase; that the labor and services rendered by Benjamin F. Harness and his wife during the fourteen months they were engaged in the business were of the value of $2,100, and they received for said services from the proceeds of the business $1,500 and no more.    At the conclusion of the verdict it contained the following:

"If upon the answers to all the interrogatories herein the law is with the plaintiff, then we find for the plaintiff and assess his damages at $587.    But, if upon the answers to all the interrogatories herein upon the issues made by the complaint, the answer thereto and the reply, the law is with the defendants, we find for the defendants.    And if, upon the answers to all the interrogatories herein, the law is with the defendant Benjamin F. Harness, upon the issues

made by the complaint, counterclaim and the reply thereto, we find for the defendant, and assess his damages at $250." The court overruled a motion of the appellee for judgment in his favor upon the verdict for $587, and a motion of the appellant Benjamin F. Harness for judgment in his favor upon the verdict for $1,300, and the court rendered judgment in favor of the appellant Benjamin F. Harness for $250 against the appellee. The appellant Benjamin F. Harness separately assigns as error the overruling of his motion for judgment in his favor on the verdict for $1,300. The appellee has assigned cross-errors; among them, that the court erred in overruling his motion for judgment in his favor on the verdict for $587.

There was, it appears, a sale of the business theretofore conducted by the appellee, and of the machinery, material and stock of manufactured goods. The appellant Benjamin F. Harness gave $3,000 for the one-half interest purchased by him. It does not appear what Ellis gave for his one-half interest. The incorporated company having carried on the business more than a year, the appellant Benjamin F. Harness sold his interest, and that of his wife. The aggregate result was a pecuniary loss, for which he sought to reimburse himself in this action upon the note representing the balance of the price of the share purchased by him. It cannot be said that there was a want or failure of consideration. It was stated in the verdict that the one-half interest in the business was worth nothing in cash if to be operated as a business by one who had no knowledge of the business, and that Benjamin F. Harness had no knowledge of the value of the business or of the goods on hand.

We hardly need take space to analyze this finding for the purpose of showing that it does not amount to

a finding that the business and goods, material and machinery, for which the note was given were absolutely without any value. It is shown that the corporation sold goods and material, and that the one-half of the capital stock was sold for a sum stated, and it appears that the purchasers received from the appellee what they contracted for. If it was not as valuable in their hands as they supposed or hoped, still it cannot be said that there was a want or failure of consideration. Many of the findings are mainfestly immaterial. It does not appear that the inventory made out by the appellee was given or shown to Benjamin F. Harness, and it does not appear whether is was a list of more or less goods than were sold, but the purchasers received substantially the articles mentioned in it. There was no relation of trust or confidence between the appellee and Benjamin F. Harness. It is not shown that he did not know the relation of Ellis to the transaction, or that Ellis did not in good faith purchase a one-half interest and pay for it as much as was paid by Harness. It was found that Ellis represented to Harness that the business was of great value, and that a large amount of money could be made out of it, and his subsequent conduct tended to indicate the sincerity of Ellis. It appears that the appellee sanctioned as true these representations of Ellis, and that the appellee himself represented to Harness that the business was worth $10,000 or more, and, in one finding, that Harness and Ellis could easily clear that amount a year out of the business, and, in another finding, that Harness could make that amount per year in the business, and, that the appellee verbally insured Harness that he could do so. It is also found that the appellee represented that he had names and addresses upon the books pertaining to the business of the value to the business of from

Harness *et al. v.* Horne.

$5,000 to $10,000.   It is not specifically found that the appellee did not have such names and addresses, and the representation may be considered as merely relating to their value.   All the representations were mere statements of opinion.   The statements of Ellis sanctioned by the appellee and the assurance of the appellee himself as to what might be realized in the future out of the business, were mere conjectures in relation to a future result dependent upon unknown contingencies.   The representation that the business was worth $10,000, though relating to the time of the making of the representation, was the statement of an opinion and not the representation of a material existing fact.

It is not denied by counsel that fraud may not be predicated of the statement of an opinion of value in general; but it is claimed that the business in question being one connected with a mode of application of electricity, the value was so exclusively within the knowledge of the appellee that this representation should be regarded as an exception to the general rule. There does not appear to have been any expression of opinion as to the value of machinery, material, manufactured goods, or of any method of manufacture or of the mode of application of electricity employed. The representation related solely to the value of the business, to ascertain which the usual methods of business men would have been sufficient, so far as appears.   It is not shown that the appellee in any way prevented examination proper for obtaining such knowledge, or that such examination was not fully made by Harness.   If he relied on such mere expressions of opinion as are shown in the verdict, he did so at his own risk.   We see no reason why the appellee should not recover upon the note in suit.   The judg-

ment is reversed, and the cause is remanded with instruction to render judgment in favor of the appellee for $587 and costs.

Wiley, J., took no part in this decision.